

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**04/10/2009**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **Case No. 05-82307-H4-13** |
| **KEVIN W. DAVIS, and** | § | |
| **JOYCE L. DAVIS,** | § | **Chapter 13** |
| | § | |
| **Debtors.** | § | |

### MEMORANDUM OPINION REGARDING DEBTORS' MOTION TO MODIFY CONFIRMED PLAN
[Docket No. 39]

### I. INTRODUCTION

The debtors in this Chapter 13 case seek to modify their previously confirmed plan to surrender collateral—a vehicle—in full satisfaction of a creditor's entire claim, both secured and unsecured. This request is accompanied by two factual caveats: First, the vehicle has substantially depreciated due to an accident. And second, the vehicle has already been repossessed by the creditor. Thus, the issue addressed in this memorandum opinion is whether a Chapter 13 debtor may modify a confirmed plan to cease making all plan payments with respect to the entire claim where (a) the collateral has severely depreciated, and (b) the collateral has already been repossessed by the creditor.

For the reasons set forth below, the Court concludes that the debtors are not permitted to surrender the vehicle in full satisfaction of the creditor's entire claim, but that, as a matter of equity, the plan may be modified so that the creditor has an entirely unsecured claim—the amount of which is the sum of (a) the unsecured portion of the bifurcated claim on the date of the confirmed plan plus (b) the difference between the secured portion of the bifurcated claim on the date of the confirmed plan and the amount of post-confirmation payments that have actually been made on this secured

claim.  Therefore, the debtors' motion to modify should be denied and the debtors may propose another modification consistent with this opinion.

## II. FINDINGS OF FACT

1.  On August 30, 2005, Kevin W. Davis and Joyce L. Davis (collectively, the Debtors) filed a voluntary Chapter 13 petition, initiating the above-referenced Chapter 13 case.

2.  On September 14, 2005, the Debtors filed a Chapter 13 Plan, [Docket No. 7], and on January 26, 2006, the Debtors filed an Amended Chapter 13 Plan (the Amended Plan).  [Docket No. 21.]  The Amended Plan proposed to pay San Antonio Federal Credit Union (San Antonio FCU), a secured creditor with a lien on a 2001 Chevrolet Suburban (the Suburban) and a 2001 Chevrolet Impala (the Impala) belonging to the Debtors.  Specifically, with respect to the Suburban, the Debtors proposed to pay a total claim of $17,095.00, with the secured portion to be $13,992, and the difference to be paid as an unsecured claim.  With respect to the Impala, the Debtors proposed to pay a total claim of $13,127.00 (the Entire Claim), with the secured portion to be $8,635.00, and the difference to be paid as an unsecured claim.  Thus, with respect to the Impala, the unsecured portion of the Entire Claim was $4,492.00.

3.  San Antonio FCU  did not object to the Amended Plan or the respective values of the Suburban or the Impala listed on the Debtors' Schedules.

4.  On February 27, 2006, this Court confirmed the Debtors' Amended Plan (the Confirmed Plan).  [Docket No. 24.]

5.  On August 5, 2008, Litton Loan Servicing, LLP, the servicer of a note in the principal amount of $43,800.00 secured by a deed of trust on the Debtors' homestead, filed a Motion for Relief From Stay Regarding Exempt Property.  [Docket No. 32.]  Litton Loan Servicing

filed this motion because the Debtors, at that time, owed $3,292.53 in post-petition arrearages on the note and Litton Loan Servicing wished to foreclose on the property.

6.    On September 5, 2008, the Debtors and Litton Loan Servicing entered into an Agreed Order Conditioning Automatic Stay, which this Court approved on September 10, 2008 (the Agreed Order).  [Docket No. 35.]  The Agreed Order provides that in exchange for Litton Loan Servicing withdrawing its motion for relief from stay, the Debtors must, within thirty days of the entry of the Agreed Order, either (a) pay Litton Loan Servicing the entire $3,292.53 (defined therein as the "Delinquent Payment Amount"), or (b) "file a proposed modification of any confirmed plan . . . to include the Delinquent Payment Amount." [Docket No. 35, ¶3.]

7.    On November 14, 2008, sixty-four days after the entry of the Agreed Order, the Debtors filed a Motion to Modify Confirmed Plan (the Motion to Modify).  [Docket No. 39.]  The modified plan proposes to pay Litton Loan Servicing's secured claim in full starting in month 53. [Docket No. 37, ¶8.]  The modified plan also proposes to surrender the Impala to San Antonio FCU in full satisfaction of its Entire Claim.  In other words, the modified plan proposes to surrender the Impala to San Antonio FCU in lieu of making any further plan payments associated with this vehicle.  The modified plan does not alter the Debtors' plan payments with respect to the Suburban.

8.    At the time the Motion to Modify was filed, the Debtors were current on their plan payments. Pursuant to the Confirmed Plan, the Debtors had already paid $6,126.80 of the $8,635.00 secured claim relating to the Impala.  Thus, as of the date of the filing of the Motion to Modify, the remaining amount of the secured claim under the Confirmed Plan was $2,508.20.

3

9.     On December 8, 2008, San Antonio FCU filed a written objection to the Motion to Modify

entitled "Objection to Motion for Valuation and to Confirmation of Chapter 13 Plan" (the

Objection).  [Docket No. 41.]  The Objection complains that the Debtors have offered no

reason for wanting to surrender the Impala and that "[t]he modification fails to state the

condition of the vehicle, its current location or any other information regarding the reason

for surrender."  [Docket No. 41, ¶2.]

10.    On February 9, 2009, this Court held a hearing on the Motion to Modify.  The Court

requested briefing from both parties and continued the hearing until February 23, 2009.

11.    On February 23, 2009, this Court held the hearing that it had continued from February 9.

After reviewing the case law submitted by the parties and citing to *In re Hernandez*, 282 B.R.

200 (Bankr. S.D. Tex. 2002), the Court gave both parties the opportunity to call witnesses

and adduce testimony regarding the Debtors' reasons for requesting plan modification.  The

Court noted that the Debtors have the burden of establishing that the Motion to Modify is

filed in good faith.  The Court once again continued the hearing on the Motion to Modify

until March 9, 2009.

12.    On March 9, 2009, the Court held the continued hearing on the Motion to Modify.  The

Court heard testimony from Kevin W. Davis (Davis), one of the Debtors, and heard closing

arguments of counsel.  San Antonio FCU did not bring any of its own witnesses, but did

cross examine Davis.

13.    At the March 9, 2009 hearing, Davis gave the following testimony as to his reasons for

wanting to surrender the Impala:

       a.     Davis's daughter, who was not listed on the insurance policy for the Impala, was

4

involved in an accident while driving the vehicle two years before the Debtors filed the Motion to Modify.

b.    The Debtors were unable to pay for repairs on the Impala and the vehicle sat in the body shop for approximately two years.  During this two year period, the Debtors continued to make regular plan payments on the Impala.

c.    Prior to the Debtors' filing of the Motion to Modify, a representative of San Antonio FCU called Davis and told him that if he failed to remove the damaged Impala from the body shop, San Antonio FCU would repossess the Impala and note the repossession on his credit report.  Because Davis could not pay for the repairs, he refused to remove the Impala from the body shop and San Antonio FCU thereafter repossessed the vehicle.[1]

d.    San Antonio FCU's repossession of the Impala caused the Debtors to include a provision in the modified plan providing for surrender of the Impala in full satisfaction of the Entire Claim.

e.    Davis testified that if San Antonio FCU had not repossessed the Impala, he would have continued making plan payments on it.  He also testified that the Debtors filed the Motion to Modify for two purposes: (1) to comply with the Agreed Order with Litton Loan Servicing, and (2) to terminate plan payments on the Impala, which he testified that San Antonio FCU has already repossessed.

---

[1] San Antonio FCU has adduced no evidence to refute Davis's testimony that San Antonio FCU repossessed the Impala.  The Court also notes that San Antonio FCU did not obtain a lifting of the stay before repossessing the Impala.

### III. CREDIBILITY OF WITNESSES

The Court finds Davis to be credible and San Antonio FCU has offered no evidence to impeach his veracity.

### IV. CONCLUSIONS OF LAW

**A.      Jurisdiction and Venue**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This contested matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O). Additionally, this matter is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").  Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.      The Debtors' Motion to Modify**

A Chapter 13 plan, once confirmed, is binding on all parties. 11 U.S.C. § 1327(a). However, the Bankruptcy Code[2] expressly allows for modification of a previously confirmed Chapter 13 plan. 11 U.S.C. § 1329. "Modification is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly."

---

[2] Any reference to "the Code" or the "Bankruptcy Code" refers to Title 11 of the United States Code, and any reference to a "section" (i.e. §) refers to a section of the Bankruptcy Code.

6

*Meza v. Truman (In re Meza)*, 467 F.3d 874, 877 (5th Cir. 2006).  While some circuits continue to require an "unanticipated" and "substantial" change in circumstances before permitting modification of a Chapter 13 plan, the Fifth Circuit does not.  *See id.* at 877-78 (adopting the approach taken by a growing number of courts that a unanticipated, substantial change is not a prerequisite to modification of a Chapter 13 plan); *see also In re Hernandez*, 382 B.R. 200, 205 (Bankr. S.D. Tex. 2002) ("Clearly, a chapter 13 plan  was intended to allow for adaptation to changing circumstances. The need for a plan confirmation to have a final, definitive effect in chapter 11 does not necessarily apply to chapter 13.").

Modification of a previously confirmed Chapter 13 plan is governed by 11 U.S.C. § 1329. Section 1329(a) provides that a Chapter 13 plan "may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim."  11 U.S.C. § 1329(a).  A plan may be modified: (1) to increase or reduce plan payments on a particular claim, (2) to extend or reduce the time for plan payments, (3) to alter the distribution to a creditor under the plan to account for non-plan payments made to that creditor, or (4) to reduce the amount to be paid under the plan by the amount the debtor pays to purchase health care insurance (subject to certain provisos and exceptions).  11 U.S.C. § 1329(a)(1)-(4).  Additionally, § 1322(b)(11), as made applicable to plan modifications by § 1329(b)(1), permits a modified plan to "include any other appropriate provision not inconsistent with [the Bankruptcy Code]."  11 U.S.C. § 1322(b)(11); *see also Hernandez,* 282 B.R. at 206 (concluding that, pursuant to § 1322(b)(11), "modification may contain any provision not expressly prohibited" by the Bankruptcy Code).  The modified plan becomes effective

7

immediately and remains effective unless and until the Court disapproves of the modified plan.[3] 11 U.S.C. § 1329(b)(2).

There are a few noteworthy exceptions to a party's ability to modify a Chapter 13 plan: First, a Chapter 13 plan may not be modified after the debtor has completed making plan payments. *See* 11 U.S.C. § 1329(a); *see also Meza*, 467 F.3d at 878 ("If a trustee could amend a Chapter 13 plan *after* the debtor completes his or her payments to the trustee, the mandatory nature of the discharge provision (11 U.S.C. § 1328) would be eviscerated." (quoting *In re Casper*, 154 B.R. 243, 247 (N.D. Ill. 1993)). Second, a Chapter 13 plan may not be modified to provide for a payment period exceeding five years from the time the first payment under the original plan was due. *See* 11 U.S.C. § 1329(c) and § 1322(d). Third, a Chapter 13 plan may not be modified in contravention of the requirements of 11 U.S.C. §§ 1322(a), (b), or § 1325(a). *See* 11 U.S.C. § 1329(b)(1). More specifically, a modified plan must conform with the content requirements of § 1322(a) and (b), and the confirmation requirements of § 1325(a).

San Antonio FCU objects to the Motion to Modify on the grounds that the modified plan contravenes the "good faith" requirement of § 1325(a)(3), as made applicable to the modified plan through § 1329(b)(1).[4]   To this end, San Antonio FCU contends that the stated reason for the modification—"to provide for the Agreed Order entered into between [the] Debtor[s] and Litton

---

[3] Here, because the Debtors filed their modified plan on November 14, 2008 to include a provision allowing for the surrender of the Impala in lieu of making further plan payments on the vehicle, they were permitted to cease making plan payments on the Impala on that date. This is so because, pursuant to § 1329(b)(2), "[t]he plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved." 11 U.S.C. § 1329(b)(2). At first glance, this section seems counterintuitive. Indeed, § 1329(b) makes a modified plan effective immediately without a hearing or court approval. Pursuant to § 1329(b)(2), only after a hearing is held and the bankruptcy court *disapproves* the modified plan does the original, confirmed plan snap back into effect.

[4] San Antonio FCU has not argued that the Debtors' modified plan violates any provision of the Bankruptcy Code other than § 1325(a)(3).

Loan Servicing,"—is a sham and that the unspoken, nefarious reason for modification is to palm off the damaged Impala in order to avoid making further plan payments on it.   The Debtors contend that the surrender of the Impala in full satisfaction of San Antonio FCU's Entire Claim is entirely permissible and that San Antonio FCU's repossession of the Impala was the impetus to the Debtors' decision to surrender the vehicle.   While this Court agrees that a Chapter 13 plan may be modified to surrender collateral in full satisfaction of the secured portion of a creditor's claim, the Debtors in this case should not be permitted to surrender the damaged Impala in full satisfaction of San Antonio FCU's Entire Claim.   However, because San Antonio FCU voluntarily repossessed the collateral, the Debtors may modify the Confirmed Plan to treat the unpaid portion of the Entire Claim as a general unsecured claim.[5]

### 1.    Reconsideration of San Antonio FCU's Claim Pursuant to § 502(j)

The Debtors propose to modify the Confirmed Plan to surrender the Impala in full satisfaction of San Antonio FCU's Entire Claim.   While § 1329(a) expressly allows for modifications of "payments on claims" and "the amount of the distribution to a creditor," nothing in § 1329 expressly permits a modification to surrender collateral in full satisfaction of a creditor's entire claim.   Bankruptcy courts encountering this issue have generally turned to 11 U.S.C. § 502(j) for the answer.   *See, e.g.*, *In re Mason*, 315 B.R. 759, 760-61 (Bankr. N.D. Cal. 2004) (determining that, although § 1329 does not expressly provide for reclassification of claims, § 502(j) does).   Section 502(j) provides that "[a] claim that has been allowed or disallowed may be reconsidered for

---

[5] Because the Debtors have already paid $6,126.80 of San Antonio FCU's $8,635.00 secured claim on the Impala, Finding of Fact No. 8, the difference—$2,508.20—should be reclassified as an unsecured claim. *See infra* Part IV.B.2.   When added to San Antonio FCU's unsecured claim at the time the plan was confirmed—i.e. $4,492.00, Finding of Fact No. 2—San Antonio FCU's total unsecured claim is $7,000.20.

cause" and that "[a] reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j).  Courts have also interpreted § 502(j) to allow for reclassification of claims from secured to unsecured when it is equitable to do so.  *See, e.g.*, *In re Taylor*, 297 B.R. 487, 490-91 (Bankr. E.D. Tex. 2003) (noting that § 502(j) may allow a debtor to modify a confirmed Chapter 13 plan to reclassify secured claims as unsecured claims).

Only three cases within the Fifth Circuit have addressed surrender of collateral in the Chapter 13 plan modification context: *In re Hernandez*, 382 B.R. 200 (Bankr. S.D. Tex. 2002); *In re Taylor*, 297 B.R. 487 (Bankr. E.D. Tex. 2003); and *In re Coffman*, 271 B.R. 492 (Bankr. N.D. Tex. 2002). The first two cases allowed surrender of collateral in full satisfaction of a creditor's entire claim; the last did not.  The Court will examine each in turn.

In *Hernandez*, the debtors sought to modify their confirmed Chapter 13 plan in order to surrender their vehicle in full satisfaction of a creditor's entire claim.  *In re Hernandez*, 382 B.R. at 202.  The Honorable Wesley W. Steen permitted the modification because there was no indication that the vehicle being surrendered had suffered anything other than normal depreciation.  *Id.* at 208. Indeed, in *Hernandez*, the creditor did not allege or offer any evidence that the value of the vehicle was less than the amount of its claim.  *Id.* at 202.  However, Judge Steen took care to note that "[r]econsideration of a claim to allow surrender of collateral in satisfaction of a claim might not be equitable if reconsideration of the claim were intended to abuse or to injure the creditor, or even if the unintended consequences of reconsideration were unfair." *Id.* at 207-08

In *Taylor*, the debtors also sought to modify their Chapter 13 plan to provide for the surrender of their vehicle to a creditor, but proposed to treat the difference between the value of the vehicle surrendered and the amount of remaining plan payments as an unsecured claim.  *In re Taylor*, 297

10

B.R. at 488. The court permitted the debtor to modify the plan to cease making all further payments to the creditor, but one important fact prevented the Bankruptcy Court for the Eastern District of Texas from considering the issue of reclassification. In that case, the modification came before the court as a *fait accompli*. That is, the debtors sought to reclassify the secured claim after they had already surrendered the vehicle and the creditor had already sold it at auction. *Id.* at 490-91.

In *Coffman*, the debtors also sought to modify their Chapter 13 plan to surrender a vehicle in lieu of making further plan payments on it. *In re Coffman*, 271 B.R. at 494-95. The Bankruptcy Court for the Northern District of Texas disallowed the proposed modification because the vehicle was in a state of disrepair. The court construed the debtors' proposed modification as an attempt to reclassify the creditor's secured claim "largely because it is no longer convenient for [the debtors] to keep the car." *Id.* at 498. The court therefore concluded that the debtors had not shown sufficient "cause" to reclassify the claim pursuant to § 502(j). *Id.* at 498-99.

This Court agrees with much of the reasoning, and the results reached, in *Hernandez, Taylor*, and *Coffman*.[6] However, none of those cases was presented with these particular facts—i.e., where

---

[6] However, this Court disagrees with the narrow definition of "cause" applied in *Coffman*. Because the word "cause," as it is used in 11 U.S.C. § 502(j), is not defined in the Bankruptcy Code, the *Coffman* court looked to Federal Rule of Civil Procedure 60(b) to determine what constitutes "cause" for reconsideration of claims pursuant to § 502(j). *In re Coffman*, 241 B.R. at 498. The court determined that the portion of Rule 60(b) applicable to the circumstances in *Coffman*—Rule 60(b)(5) and (6)—could be invoked only "upon a showing of exceptional circumstances." *Id.* (quoting *Nat'l Credit Union Admin Bd. v. Gray*, 1 F.3d 262, 266 (4th Cir. 1993)). Based on this reasoning, the court concluded that the diminished value of the vehicle sought to be surrendered was not an exceptional circumstance and that, therefore, the debtors had not shown cause for reconsidering the creditor's claim. *Id.* at 498-99.

Given the Fifth Circuit's opinion in *Meza*—which was decided after *Coffman*—this Court does not believe that the Debtors need to show "exceptional circumstances" in order to have San Antonio FCU's claim reconsidered in the plan modification context. In *Meza*, the Fifth Circuit expressly rejected the notion that a debtor needs to show a substantial and unanticipated change in order to modify a previously confirmed Chapter 13 plan. *Meza*, 467 F.3d at 877. Thus, to require "exceptional circumstances" as a prerequisite to modification in this case would contravene the Fifth Circuit's directive in *Meza*.

Additionally, even if reconsideration of San Antonio FCU's claim does require "exceptional circumstances," the Court finds that the facts of this case are sufficiently "exceptional" to warrant reconsideration of San Antonio FCU's claim. Like the debtors in *Coffman*, the Debtors in this case seek reconsideration of a creditor's claim in the face of substantially depreciated collateral. But here, unlike *Coffman*, San Antonio FCU has voluntarily repossessed the

the vehicle has fully depreciated and has also been repossessed by the creditor.  In *Hernandez*, the debtors sought to surrender the vehicle in full satisfaction, but the vehicle had not depreciated.  In *Coffman*, the vehicle had depreciated, but the creditor had not repossessed it.  And, in *Taylor*, the vehicle had already been repossessed, but it had not depreciated.

A Chapter 13 debtor should be able to modify his plan to surrender collateral in full satisfaction of a creditor's entire claim where it is equitable to do so.  In both *Hernandez* and *Taylor*, the debtors were permitted to surrender the collateral in full satisfaction of a creditor's claim because there was no evidence that the amount of the claim differed from the value of the collateral.  In *Coffman*, the debtors were not permitted to surrender because it would have been decidedly inequitable to force the creditor to accept a severely depreciated vehicle in full satisfaction of its entire claim.

The case at bar falls squarely within Judge Steen's hypothetical situation in *Hernandez* where surrender in full satisfaction of a creditor's entire claim would be inequitable.  Here, unlike *Hernandez*, the value of the Impala has sharply decreased due to the accident.  [Finding of Fact No. 13.]  Thus, this Court cannot, as the court did in *Hernandez*, simply reclassify San Antonio FCU's

---

depreciated collateral. In *Taylor*, because the creditor had already repossessed the vehicle and sold it at auction, the court allowed the debtors to modify their plan to provide for surrender in full satisfaction of the creditor's entire claim. *In re Taylor*, 297 B.R. at 491. As in *Taylor*, the fact that the Debtors in this case no longer possess the Impala weighs strongly in favor of reconsidering San Antonio FCU's claim pursuant to § 502(j). Indeed, no portion of San Antonio FCU's claim can be properly classified as "secured" because San Antonio FCU has already repossessed the Impala. *See In re Zieder*, 363 B.R. 114, 117 (Bankr. D. Ariz. 2001). As the court reasoned in *Taylor*, "It would be grossly unfair to engage in a legal fiction and declare Creditor's debt secured when the collateral has already been sold. There can be no secured debt if there is no collateral." *In re Taylor*, 297 B.R. at 491. Thus, even if exceptional circumstances were required, this Court believes that the circumstances of this case are sufficiently "exceptional" to reconsider San Antonio FCU's claim.

Entire Claim to be the value of the vehicle surrendered.[7]  *Id.* at 208.  While this Court fully agrees

with Judge Steen's legal conclusion that a Chapter 13 plan may be modified to provide for the

surrender of collateral in full satisfaction of a creditor's claim, and while this Court fully agrees with

the result reached in *Hernandez*, the facts of this case do not compel the same result.   Clearly,

because San Antonio FCU voluntarily repossessed the collateral securing its claim—i.e., the

Impala—it no longer continues to have a secured claim as a matter of law.  *See, e.g.*, *In re Zieder*,

363 B.R. 114, 117 (Bankr. D. Ariz. 2001) (determining that "[t]here is no provision of the Code .

. . that gives a creditor a secured claim without any collateral" and that repossession of the collateral

is "adequate cause for reconsideration pursuant to § 502(j)"); *In re Hernandez*, 282 B.R. at 207 n.15

(acknowledging that "surrender or repossession after confirmation constitutes satisfaction of the

secured claim 'other than under the plan'" pursuant to 11 U.S.C. § 1329(a)(3)) (quoting  Keith M.

Lundin, Chapter 13 Bankruptcy, § 264.1, at 264-2 (3d ed. 2000)).   However, as a matter of equity,

this Court will not permit the Debtors to escape all indebtedness to San Antonio FCU by

---

[7] In fact, in *Hernandez*, Judge Steen took care to address the issue of reclassification, albeit in dicta. Essentially, he determined that reclassification of the remaining portion of the creditor's secured claim as an unsecured claim was unnecessary in *Hernandez* because there had been no showing that the value of the vehicle to be surrendered was less than the amount of the creditor's claim. Alternatively, Judge Steen concluded that if reclassification were appropriate, he would reclassify the creditor's claim as the value of the vehicle surrendered:

> Reconsideration of a claim to allow surrender of collateral in satisfaction of a claim might not be equitable if reconsideration of the claim were intended to abuse or to injure the creditor, or even if the unintended consequences of reconsideration were unfair. In the case currently under consideration, there has been no showing (nor even an allegation) of improper motive or unfairness. In addition, if the standards of Rule 60(b) of the Federal Rules of Civil Procedure are guidelines for reconsideration of the claim, then the Court concludes that surrender of a pickup truck resulting from medical expenses and lost income in order to make payments sufficient to keep a family home, when there is no alleged or proven difference between the value of the vehicle and the remaining amount of the secured claim or other harm to the creditor, constitutes circumstances under which it is no longer equitable that the judgment should have prospective application and justifies relief from the operation of the judgment. Therefore, were it necessary to reconsider the claim and to reclassify the secured portion of the claim, the Court would do so and would reclassify Household's secured claim to be the value of the Chevrolet S-10 pickup truck surrendered.

*In re Hernandez*, 382 B.R. at 207-08 (internal marks and citations omitted).

surrendering a vehicle that, due to an accident for which the Debtors are responsible, has been rendered worthless. [Finding of Fact No. 13.] Rather, this Court concludes that, given the sharp decline in the value of the Impala—which occurred due to the actions of the Debtors' uninsured daughter—the unpaid portion of San Antonio FCU's secured claim should be reclassified as an unsecured claim pursuant to 11 U.S.C. § 506(a).

### 2. Reclassification of San Antonio FCU's Secured Claim as Unsecured

11 U.S.C. § 506(a) provides that a creditor with an allowed claim secured by collateral in which the estate has an interest has a secured claim to the extent of the value of the collateral and an unsecured claim to the extent the amount the allowed claim exceeds the value of the collateral. Section 506(a) is known as the "bifurcation" provision of the Bankruptcy Code because it effectively bifurcates an undersecured creditor's claim into a secured portion and an unsecured portion. *See Dewsnup v. Timm*, 502 U.S. 410, 414-25 (1992) (explaining that "§ 506(a) bifurcates classes of claims allowed under § 502 into secured claims and unsecured claims").

As mentioned above, courts in the Fifth Circuit have held that a Chapter 13 plan may be modified to reconsider a creditor's claim pursuant to § 502(j). These courts have also suggested that a secured claim that is reconsidered pursuant to § 502(j) may also be bifurcated into secured and unsecured portions pursuant to § 506(a). The *Hernandez* court touched upon the issue of reclassification but ultimately determined that reclassification of the secured portion of the creditor's claim was unnecessary because there was no evidence that the value of the vehicle surrendered was less than the amount of the claim. *In re Hernandez*, 382 B.R. at 207-08. The *Taylor* court also considered reclassifying the creditor's claim from secured to unsecured, but ultimately determined that reclassification was unnecessary because there was no evidence that the vehicle had depreciated

14

and the creditor had already accepted the vehicle and sold it at auction. *In re Taylor*, 297 B.R. at 490-91. And, because the debtors in *Coffman* could not show cause for reconsidering the creditor's secured claim under § 502(j), the court determined that "it is not necessary to address whether the equities of the case mandate a reclassification." *In re Coffman*, 271 B.R. at 498. This Court must therefore confront the question that the courts in *Hernandez*, *Taylor*, and *Coffman* did not resolve: May a Chapter 13 debtor modify the confirmed plan to reclassify a secured creditor's claim as unsecured where the collateral has depreciated and has also been repossessed? Because courts in the Fifth Circuit have not yet confronted this issue, this Court looks to guidance from other circuits.

Courts are currently spilt on the issue of whether a Chapter 13 plan may be modified to reclassify a secured claim as unsecured. The first line of cases take the position that a debtor may modify a Chapter 13 plan to surrender a vehicle and reclassify the creditor's deficiency claim as unsecured. *See In re Disney*, 386 B.R. 292, 298 (Bankr. D. Colo. 2008); *In re Ross*, 373 B.R. 656 (Bankr. W.D. Mo. 2007); *In re Taylor*, 297 B.R. 487 (Bankr. E.D. Tex. 2003); *In re Hernandez*, 282 B.R. 200 (Bankr. S.D. Tex. 2002); *In re Knappen*, 281 B.R. 714 (Bankr. D.N.M. 2002); *In re Zieder*, 263 B.R. 114 (Bankr. Ariz. 2001); *In re Townley*, 256 B.R. 697 (Bankr. D.N.J. 2000); *In re Day*, 247 B.R. 898 (Bankr. M.D. Ga. 2000); *In re Johnson*, 247 B.R. 904 (Bankr. S.D. Ga. 1999); *In re Waller*, 224 B.R. 876 (Bankr. W.D. Tenn. 1998); *In re Anderson*, 153 B.R. 527 (Bankr. M.D. Tenn. 1993); *In re Rimmer*, 143 B.R. 871 (Bankr. W.D. Tenn. 1992); *In re Frost*, 96 B.R. 804 (Bankr. S.D. Ohio 1989); *In re Jock*, 95 B.R. 75 (Bankr. M.D. Tenn. 1989); *In re Stone*, 91 B.R. 423 (Bankr. N.D. Ohio 1988). The second line of cases hold that § 1329 does not permit a post-confirmation modification that provides for reclassification of a creditor's secured claim. *See In re Arguin*, 345 B.R. 876 (Bankr. N.D. Ill 2006); *In re Smith*, 259 B.R. 323 (Bankr. S.D. Ill. 2001); *Chrysler Financial Corp.*

*v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000); *Sharpe v. Ford Motor Credit Co. (In re Sharpe)*, 122 B.R. 708 (E.D. Tenn. 1991); *In re Meeks*, 237 B.R. 856 (Bankr. M.D. Fla. 1999); *In re Coleman*, 231 B.R. 397 (Bankr. S.D. Ga. 1999); *In re Dunlap*, 215 B.R. 867 (Bankr. E.D. Ark. 1997); *In re Banks*, 161 B.R. 375 (Bankr. S.D. Miss. 1993); *In re Abercrombie*, 39 B.R. 178 (Bankr. N.D. Ga. 1984).

The Bankruptcy Court for the Northern District of Texas has provided an apt description of the controversy, which has now seeped into the treatises of preeminent legal commentators:

> The legal issue presented here has been addressed by a number of courts. Unfortunately, the courts do not agree on the correct interpretation of the Bankruptcy Code in answer to this question. Some courts allow such a modification, while others do not. *See In re Goos*, 253 B.R. 416 (Bankr. W.D. Mich. 2000) (summarizing the current case law). Not to be outdone, the commentators are also in disagreement. While two bankruptcy treatises suggest that a chapter 13 plan can be modified to surrender collateral and reclassify the resulting deficiency if the other requirements for confirmation of a modified plan are satisfied, *see* Keith M. Lundin, Chapter 13 Bankruptcy, § 6.49, at 6-126 (1993); 8 Collier on Bankruptcy ¶ 1329.02, at 1329-4 (Lawrence P. King ed., 15th ed. 1992), a third states that "the emerging majority trend holds that § 1329 may not be utilized by a debtor to voluntarily surrender collateral, and reclassify any deficiency after the creditor's sale of the collateral to an unsecured claim," *see* 5 William L. Norton, Jr., Norton Bankruptcy Law and Practice, § 124:3, at 124-39 (2d ed.1997).

*In re Cameron*, 274 B.R. 457, 459-60 (Bankr. N.D. Tex. 2002).

The argument in favor of allowing Chapter 13 debtors to modify the plan to reclassify secured claims as unsecured claims is largely the same as the reasoning behind the decisions allowing the debtor to surrender collateral in full satisfaction of a creditor's claim. Essentially, the first line of cases reason that § 502(j) allows for reconsideration of secured claims as a matter of equity and that § 502(j) continues to apply after a plan is confirmed. These cases also reason that because § 506(a) provides for bifurcation of undersecured claims into secured and unsecured

portions, reconsideration of a secured claim pursuant to § 502(j) includes reclassifying an undersecured deficiency as an unsecured claim. The Court agrees with this reasoning.

*In re Zieder*, 363 B.R. 114 (Bankr. D. Ariz. 2001) is analogous to the case at bar. In *Zieder*, the debtor made plan payments for approximately one year before attempting to modify his plan to surrender the vehicle. *Id.* at 116. The court concluded that the debtor's modification was permissible and that payments on the debtor's previously secured claim be reduced to zero. *Id.* The Court also concluded that the secured creditor's unsecured claim be increased by the amount of the creditor's remaining secured claim. *Id.* The court reasoned that § 502(j)—discussed above *supra* Part IV.B.1—along with § 506(a) "compel the conclusion that [the creditor's] remaining claim must be reconsidered for cause and, when reconsidered, it becomes an unsecured claim by operation of law." *Id.* at 117. The Court finds this reasoning to be particularly compelling under the present facts.

The argument against permitting plan modifications that reclassify secured claims as unsecured claims is as follows: Section 1329 is the sole authority for modification of a Chapter 13 plan; reclassification of secured claims is not among the types of modifications enumerated in § 1329; and, according to the Sixth Circuit, "[t]here is no indication that Congress intended to allow debtors to reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through [the] confirmation of the Chapter 13 plan." *Nolan*, 232 F.3d at 534. The Court disagrees with this reasoning for two reasons.

First, the notion that § 1329 is the sole authority for modification of a Chapter 13 plan, while true, does not somehow extinguish other sections of the Bankruptcy Code—such as § 502(j) and § 506(a)—which continue to apply post-confirmation. The contention that § 1329 renders § 502(j) and

17

§ 506(a) null and void once a plan is confirmed not only contradicts the plain language of those sections, but also reads language into § 502(j) and § 506(a) that is not there (i.e., that those sections apply in a Chapter 13 case only until the plan is confirmed).  *See In re Disney*, 386 B.R. at 298 ("Importantly, the plain language of § 502(j) is devoid of language imposing a temporal limitation on a party's right to move to have a claim reconsidered, nor does any limitation appear in the statute that withdraws the right to move for such a modification after a plan has been confirmed.").  Further, § 1329 expressly provides that "the amount of the distribution to a creditor" in a Chapter 13 plan may be modified to "take into account any payment of such claim other than under the plan."  11 U.S.C. § 1329(a)(3).  A debtor's surrender of collateral to a creditor is unquestionably a form of "payment."[8]  Thus, § 1329, when read in conjunction with § 502(j) and § 506(a), allows a plan to be modified in order to reclassify secured claims as a matter of equity.  To hold otherwise necessarily embraces the unwieldy concept that a creditor who has repossessed its collateral continues to have a secured claim.  Indeed, "to preclude a Chapter 13 debtor from modifying the plan to reflect that a creditor repossessed its collateral and is thus no longer the holder of an allowable secured claim turns the Code on its head." *In re Lane*, 374 B.R. 830, 837 (Bankr. D. Kan. 2007) (quoting Keith M. Lundin, Chapter 13 Bankruptcy at 264-4).

Second, the notion that reclassification of secured claims unfairly shifts the risk of depreciation to creditors is misplaced.  Section 502(j) expressly allows for reconsideration of claims

---

[8] Black's Law Dictionary defines "payment" as "[p]erformance of an obligation, usually by the delivery of money. *Performance may occur by delivery and acceptance of things other than money*, but there is payment only if money or other valuable things are given and accepted in partial or full discharge of an obligation."  Black's Law Dictionary 1150 (7th ed. 1999) (emphasis added).  Although the Impala was involved in an accident, thereby decreasing its value, the record is unclear as to what the value of the vehicle was when San Antonio FCU repossessed this car. That San Antonio FCU went forward with the repossession underscores that it believed that the vehicle was sufficiently valuable to recover and proceed with foreclosure on its lien or otherwise dispose of this asset.

"according to the equities of the case." 11 U.S.C. § 502(j). Thus, there is no serious danger that § 502(j) will be used to achieve an unfair result—reconsideration for cause is committed to the discretion of the bankruptcy court, to be applied where equity so requires. Additionally, reconsideration of claims does not "shift" the loss of collateral depreciation to creditors because creditors bear this risk to begin with. *See, e.g., Rushton v. State Bank of S. Utah (In re Gledhill)*, 164 F.3d 1338, 1342 (10th Cir. 1999) ("Like all creditors, the Bank bore the risk of collateral depreciation." (citing 4 Collier on Bankruptcy, ¶ 506.02, at 506-8)); *In re Ross*, 373 B.R. at 660 ("[T]he risk of depreciation of collateral is a risk a secured creditor always bears." (quoting *Bank One, NA v. Leuellen*, 322 B.R. 648, 660 (S.D. Ind. 2005), and citing *Zieder*, 263 B.R. at 118)). This is especially true where, as here, the creditor voluntarily accepts the depreciated collateral by repossessing it. The Honorable Karen N. Moore, Circuit Judge for the United States Court of Appeals for the Sixth Circuit, articulated this point in her dissent to the majority's opinion in *Adkins* (which refused to allow the Chapter 13 trustee to reclassify a creditor's secured claim even after the creditor repossessed the collateral):

> In this case, the debtor did not seek to surrender the collateral nor to disturb the confirmed plan. Instead it was the creditor who decided its interests were better served by obtaining its state-law remedies to repossess the collateral, and therefore the creditor moved to redeem its secured claim outside the plan.
> In extending the holding in *Nolan* to allow a creditor who initiated sale of the collateral to recover any deficiency as a secured claim, the majority entirely relieves the creditor of any obligation to protect its own interests against anticipated depreciation in its pre-confirmation dealings. On the contrary, I believe that the creditor has the obligation to ensure that as time goes by and, as in this case, payments are not made and it repossesses the collateral, the value of the collateral when liquidated will equal the amount of the remaining claim.
> . . . .
> In addition to relieving creditors of their obligations to protect their own interests pre-confirmation, the majority's holding creates a second disincentive for creditors to act diligently. By guaranteeing creditors the payment of the entire amount deemed

secured at the time of confirmation regardless of what the sale of collateral brings, the majority eliminates any incentive for creditors who force a sale of collateral to take care to protect the value of the collateral throughout the repossession process. Applying *Nolan* to the facts in this case allows a creditor to shift the risk of loss totally to the debtor, thereby turning the debtor into a guarantor. Debtors, not creditors, will bear the costs of reckless or careless repossession agents hired by the creditors.

*Ruskin v. DaimlerChrysler Servs. N. Am., L.L.C., (In re Adkins)*, 425 F.3d 296, 307 (6th Cir. 2005)

(Moore, J., dissenting).

Although surrender of the Impala in full satisfaction of San Antonio FCU's Entire Claim is inappropriate due to the sharp decline in the vehicle's value resulting from the accident involving the Debtors' daughter, this Court concludes that San Antonio FCU's voluntary repossession of the Impala provides sufficient cause to permit the Debtors to reclassify the unpaid portion of San Antonio FCU's secured claim as unsecured.[9]

## V. CONCLUSION

In sum, this Court concludes that surrender of the Impala in full satisfaction of San Antonio FCU's Entire Claim is inequitable, but that it is proper for the Debtors to modify the Confirmed Plan to reclassify the unpaid portion of San Antonio FCU's secured claim—$2,508.20—as unsecured. This amount, when added to San Antonio FCU's unsecured deficiency on the date that the Confirmed Plan was approved—i.e. $4,492.00—results in a total unsecured claim of $7,000.20 with respect to the Impala. Thus, the Confirmed Plan may be modified to reclassify San Antonio FCU's total claim relating to the Impala as a general unsecured claim for $7,000.20.

---

[9] It is also worth noting that San Antonio FCU's repossession of the Impala violated the automatic stay. *See* 11 U.S.C. § 362(a)(3) (staying "any action to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"). This violation provides another reason why equity favors reconsideration of San Antonio FCU's secured claim in this case.

Accordingly, for the reasons set forth herein, the Court finds that the Motion to Modify should be denied without prejudice to the Debtors to file another modified plan which give San Antonio FCU a general unsecured claim of $7,000.20. If the Debtors choose to take this approach, they will need to file the modified plan by no later than April 30, 2009. A separate order memorializing this ruling will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed on this 10th day of April, 2009

Jeff Bohm
United States Bankruptcy Judge